UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TWITCH INTERACTIVE, INC., <br> Plaintiff, <br> v. <br> JOHN AND JANE DOES 1 THROUGH 100, <br> Defendant. | Case No. 19-cv-03418-WHO <br><br> **ORDER GRANTING PLAINTIFF'S EX PARTE APPLICATION FOR LEAVE TO SERVE THIRD-PARTY SUBPOENAS** <br><br> Re: Dkt. No. 12 |

Plaintiff Twitch Interactive, Inc. brings claims against numerous Doe defendants who allegedly coordinated to post racist, misogynistic, and violent content on its online video platform. Twitch has determined certain addresses associated with this activity, but it has been unable to identify the actors through its own efforts. Twitch now applies ex parte for limited expedited discovery and leave to serve subpoenas on Twitter, Google, Microsoft/Hotmail, Discord, Verizon, Comcast Cable Communications LLC, Contina, Charter Communications Inc., Optimum Online, Suddenlink Communications, and OVH Hosting to learn the Doe the identities of the Doe defendants. For reasons stated below, I will grant the application.

**BACKGROUND**

Twitch is an online streaming video platform that operates www.twitch.tv. Compl. [Dkt. No. 1] ¶¶ 12, 15. Its members can stream videos in real time and share content that predominantly features video games, sports, and creative arts. *Id.* ¶ 15. While users do not have to register to watch videos on Twitch, they must register an account if they wish to stream. *Id.* ¶ 19. To register an account on Twitch, the user must agree to be bound by Twitch's Terms of Service,

Community Guidelines, Developer Services Agreement, and Trademark Guidelines. *Id.* ¶ 24. Twitch has been an Amazon subsidiary since 2014. *Id.* ¶ 15.

On June 14, 2019, Twitch filed a complaint alleging that a group of unnamed defendants "flooded the Twitch.tv directory for the game Artifact with dozens of videos that violated Twitch's policies and terms." *Id.* ¶ 3. These videos included a video of the March 2019 Christchurch mosque attack, pornography, copyrighted movies and televisions shows, and racist and misogynistic videos. *Id.* Though Twitch took down the prohibited content and permanently suspended the accounts that posted it, "the offensive videos quickly reappeared using new accounts." *Id.* ¶¶ 4, 35. Twitch contends that the defendants used "bots" to manipulate the viewer counts of the offensive videos, driving traffic to this material. *Id.* ¶ 38. The defendants used websites such as Google, Discord, and Weebly to communicate about and coordinate their efforts. *Id.* ¶ 39. After these platforms banned the defendants, they set up additional Discord groups and used a website, www.artifactstreams.com, which features Twitch's registered "GLITCH" mark prominently. *Id.* ¶¶ 20, 39–41. The defendants also created the Twitter account @TwitchToS, which uses Twitch's registered "TWITCH" mark. *Id.* ¶¶ 20, 42.

In response to these activities, Twitch suspended streaming for all new Twitch accounts, modified its systems to require two-factor authentication for all streaming accounts, and spent time and money researching and taking action against the defendants. *Id.* ¶¶ 46, 49. In doing so, it "expended significant resources." *Id.* ¶ 49.

On June 27, 2019, Twitch applied ex parte for leave to serve Internet Service Providers (ISPs) and social media companies associated with the defendants. Application for Leave to Serve a Third-Party Subpoena ("Appl.") [Dkt. No. 12]. Twitch seeks the identities of the Doe defendants, which it will use to effectuate service. *Id.* at 1.

**LEGAL STANDARD**

Although Federal Rule of Civil Procedure 26(d)(1) generally prohibits discovery prior to a Rule 26(f) conference, parties may conduct early discovery with a court order. Fed. R. Civ. P. 26(d)(1). Courts in the Ninth Circuit apply the "good cause" standard to determine whether such an order is appropriate. *UMG Recordings, Inc. v. Doe*, No. C 08-1193 SBA, 2008 WL 4104214,

at *4 (N.D. Cal. Sept. 3, 2008) (compiling cases). "Good cause exists where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.* at *5.

In applying this standard, courts consider whether the plaintiff has (i) "identif[ied] the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court"; (ii) "identif[ied] all previous steps taken to locate the elusive defendant"; (iii) "establish[ed] to the Court's satisfaction that [the suit] could withstand a motion to dismiss"; and (iv) filed a request showing "a reasonable likelihood that the discovery process will lead to identifying information about defendant that would make service of process possible." *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578–80 (N.D. Cal. 1999). Courts have granted early discovery where the plaintiff seeks facts that would make service on the defendant possible. *See Dallas Buyers Club LLC v. Doe-73.202.228.252*, No. 16-cv-00858-PSG, 2016 WL 1138960, at *1 (N.D. Cal. Mar. 23, 2016).

## DISCUSSION

### I. GOOD CAUSE FOR EARLY DISCOVERY

There is good cause for early discovery here because (i) Twitch has identified the defendants with sufficient particularity, (ii) Twitch has taken steps to locate the individuals, (iii) the complaint is likely to survive a motion to dismiss, and (iv) early discovery will likely lead to the defendants' identities.

#### A. Identifying Defendant with Sufficient Specificity

Under the first factor, a plaintiff must identify the unknown party with sufficient specificity such that the court can determine that the defendant is a real person or entity that could be sued in federal court. *Seescandy*, 185 F.R.D. at 578.

Twitch has sufficiently established that the Doe defendants are real persons or entities. Twitch claims that the defendants posted prohibit content on Twitch's platform, violated Twitch's terms by creating new accounts after a permanent suspension, used bots to manipulate their viewer counts and drive traffic to their channels, infringed on Twitch's registered trademarks, and used third-party websites to coordinate posting prohibited content. Compl. ¶¶ 34–43. Carl Hester, a

3

1    Senior Incident Response Engineer at Twitch, conducted an investigation into the accounts that
2    streamed the prohibited material. Declaration of Carl Hester ("Hester Decl.") [Dkt. No. 12-2] ¶¶
3    1–2. In the course of this investigation, Hester identified Twitch user "Skel," a Gmail and
4    Hotmail address linked to Skel's Twitch accounts, and the IP addresses associated with the
5    accounts. *Id.* ¶¶ 4–7. Additionally, Twitch has identified "thousands" of IP addresses connected
6    with the accounts streaming prohibited content. *Id.* ¶ 9. Several of these IP addresses were
7    searched using "a reverse WhoIs tool," which provides ISP and geolocation information for IP
8    addresses. Declaration of Holly M. Simpkins ("Simpkins Decl.") [Dkt. No. 12-3] ¶ 8. This search
9    identified the IP addresses geolocated in the United States and found they were associated with the
10   following internet service providers: Verizon, Comcast, Contina, Charter, Optimum, and
11   Suddenlink. *Id.* The search additionally identified several IP addresses associated with a
12   Canadian cloud computing company named OVH. *Id.* ¶ 9.

13   Twitch has also made a sufficient showing that the Doe defendants are subject to specific
14   personal jurisdiction in California. The Ninth Circuit applies a three-part test to determine
15   whether a party has sufficient minimum contacts to subject it to personal jurisdiction: (i) the non-
16   resident defendant must purposefully direct his activities into the forum or purposefully avail
17   himself of the privilege of conducting activities in the forum; (ii) the claim must arise out of or
18   relate to forum related activities; and (iii) the exercise of jurisdiction must comport with fair play
19   and substantial justice. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir.
20   2004). Twitch asserts that its servers are located in California, that the defendants have
21   "repeatedly, knowingly, and intentionally accessed" those servers, and that the defendants
22   "targeted their wrongful acts at Twitch," which is headquartered in San Francisco. Compl. ¶¶ 10,
23   34, 55. The harm that the defendants intentionally caused during the May 2019 attack occurred in
24   California. *See Uber Techs, Inc. v. Doe*, No. C 15–00908 LB, 2015 WL 1205167, at *3 (N.D. Cal.
25   Mar. 16, 2015) (citing *Calder v. Jones*, 465 U.S. 783, 789 (1982)); *see also Yelp Inc. v. Catron*, 70
26   F. Supp. 3d 1082, 1093 (N.D. Cal. 2014) (finding personal jurisdiction was proper because the
27   defendant's actions were directed at a California company and caused harm there). This showing
28   is sufficient to demonstrate that the defendants may be amenable to suit in this district.

### B. Previous Steps Taken to Identify Defendants

To be entitled to early discovery, a plaintiff must have taken sufficient steps to locate the defendant prior to petitioning the court. *Seescandy*, 185 F.R.D. at 579.

Twitch took numerous steps to identify the defendants as part of its internal investigation into the May 2019 attack. It identified a Twitch user "Skel," and located two email addresses and two IP addresses connected with Skel's accounts. Hester Decl. ¶¶ 4, 6. Twitch identified the IP addresses associated with accounts that streamed prohibited content, conducted a reverse IP address lookup using WhoIs, and identified the following ISPs: Verizon, Comcast, Contina, Charter, Optimum, Suddenlink, and OVH (a Canadian cloud computing company). *Id.* ¶¶ 8–9. Twitch identified the website that the defendants allegedly used to coordinate their attacks and found an email address associated with the website. Hester Decl. ¶ 8; Simpkins Decl. ¶ 5. Twitch also located the Discord groups the defendants used. *Id.* Simpkins Decl. ¶ 3. Finally, Twitch's counsel sent a copy of the complaint to the email addresses associated with Skel's accounts and the website, asking defendants to identify themselves. *See* Simpkins Decl. ¶ 11, Exs. F–H.

These efforts are sufficient to satisfy this factor.

### C. Ability to Withstand Motion to Dismiss

Next, a plaintiff must demonstrate that the claims could likely withstand a motion to dismiss by "mak[ing] some showing that an act giving rise to civil liability actually occurred and that the discovery is aimed at revealing specific identifying features of the person or entity who committed that act." *Seescandy*, 185 F.R.D. at 580. I assess each cause of action in turn.

#### 1. Federal Trademark Infringement

To state a claim for trademark infringement, a plaintiff must allege "(1) ownership of a valid mark (i.e., a protectable interest), and (2) that the alleged infringer's use of the mark is likely to cause confusion, or to cause mistake, or to deceive consumers." *Rise Basketball Skill Development, LLC v. K Mart Corp.*, No. 16-cv-04895-WHO, 2017 WL 2775030, at *3 (N.D. Cal. June 27, 2017) (citing *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006).

Twitch has submitted copies of its U.S. Patent and Trademark Office registrations for the

"GLITCH" and "TWITCH" marks. Compl. ¶ 51, Ex. A [Dkt. 1-1]. Twitch contends that it "has attained substantial goodwill and strong recognition in the GLITCH and TWITCH marks and the marks have come to be exclusively associated with Twitch." *Id.* ¶ 23. Twitch has also alleged that the defendants use the GLITCH mark on www.artifactstreams.com and use the TWITCH mark on Twitter account @TwitchTOS. *Id.* ¶¶ 53, 40–43 (including images of the unauthorized uses). These allegations are likely sufficient to survive a motion to dismiss.

### 2. Breach of Contract

To state a claim for breach of contract, a plaintiff must plead: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom." *Kaar v. Wells Fargo Bank, N.A.*, No. C 16-01290 WHA, 2016 WL 3068396, at *1 (N.D. Cal. June 1, 2016) (citation omitted).

Twitch's breach of contract claim is based on its terms of service agreement. Compl. ¶ 64; *see Yelp*, 70 F. Supp. 3d at 1099 (noting that Yelp's terms of service was a contract). Twitch alleges that it has "dutifully performed its obligations pursuant to the Terms." Compl. ¶ 69. To register for a Twitch account, users "must affirmatively accept the Terms." *Id.* ¶ 62. Twitch alleges that the defendants violated the terms by streaming prohibited content, manipulating their identifying information, impairing other users' enjoyment of Twitch, and using bots to manipulate their statistics on Twitch. *Id.* ¶¶ 68(a)–(d). Twitch asserts that defendants' breach caused it lost profits and led it to expend resources to combat the attack. *Id.* ¶¶ 49, 70. These allegations are likely sufficient to survive a motion to dismiss.

### 3. Trespass to Chattels

To state a claim for trespass to chattels, a plaintiff stating a claim must allege that "(1) the defendant intentionally and without authorization interfered with the plaintiff's possessory interest in the computer system and (2) the defendant's unauthorized [use] proximately caused damage to the plaintiff." *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 842 (N.D. Cal. 2017) (citation omitted). "California case law has long recognized that consent to enter may be limited and that a trespass claim may lie when the scope of consent is exceeded." *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 455 (N.D. Cal. 2018).

Twitch alleges that the Doe defendants streamed pornography, copyrighted movies and television shows, racist and misogynistic videos, and a video of the March 2019 Christchurch mosque attack. Compl. ¶ 3. Twitch contends its terms of service "expressly prohibit anyone who access or uses the Twitch Services from posting obscene, pornographic, violent, or otherwise harmful content." *Id.* ¶ 26. Defendants' unauthorized use allegedly caused Twitch to suffer the damages referenced above. *Id.* ¶¶ 49, 70. These allegations are likely sufficient to survive a motion to dismiss.

### 4. Fraud

"To state a fraud claim under California law, a plaintiff must allege with particularity: (1) false representations as to material fact; (2) knowledge of its falsity; (3) intent to defraud; (4) actual and justifiable reliance; and (5) resulting damage." *Bonete v. World Savings Bank, FSB*, No. 15-01219 JSW, 2015 WL 12990148, at *6 (N.D. Cal. Aug. 11, 2015) (citation omitted). To comply with Federal Rule of Civil Procedure 9(b), a party alleging fraud "must state with particularity" the circumstances constituting fraud. Fed. R. Civ. P. 9(b). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Twitch alleges that the defendants committed fraud when they agreed to abide by Twitch's terms of service with no intention of doing so. Compl. ¶¶ 79, 80. After Twitch banned the defendants from its platform, they "misrepresented and concealed their identities and other personally identifying information (such as IP addresses)" to create new Twitch accounts and repost the offending material. *Id.* ¶¶ 82–83. Twitch justifiably relied on these representations when it allowed the defendants to access its services. *Id.* ¶ 84. These allegations are likely sufficient to survive a motion to dismiss.

### D. Likelihood that Discovery Will Lead to Identifying Information

Last, Twitch must show "a reasonable likelihood that the discovery process will lead to identifying information about defendant that would make service of process possible." *See Seescandy*, 185 F.R.D. at 580. Twitch has submitted copies of the subpoenas it intends to send, which request "physical address, email address, secondary or recovery email address, records of

7

session times and duration including logs of IP addresses, length of service including account [start][1] date, any other subscriber number or identity including any temporarily assigned network address; and means and source of payment, including any credit card or bank account numbers." *See* Appl. Exs. J-M [Dkt. No. 12-4]. There is a reasonable likelihood that in response to these subpoenas, Verizon, Comcast, Contina, Charter, Optimum, Suddenlink, and OVH will provide the names and addresses of the individuals involved in the May 2019 attack. It is also reasonably likely that Google, Discord, Microsoft, and Twitter will provide information identifying the individuals associated with @TwitchTOS, the Discord groups, Skel's email addresses, and the email address associated with www.artifactstreams.com. That said, Twitch should be able to obtain information sufficient to identify and serve process on the Doe defendants without subpoenaing credit card or bank account numbers. It has not shown the need for this information at this stage; Twitch shall amend the subpoenas to omit these requests.[2]

"Even if the subscriber is not the proper defendant, learning his or her identify may allow [plaintiff] to work with the subscriber to locate that individual." *See Strike 3 Holdings, LLC*, 2019 WL 402358, at *3. Twitch's discovery request is reasonably likely to lead to named defendants whom it can serve. Additionally, Twitch has shown that the need for expedited discovery outweighs the prejudice to the responding party, as the responding parties are "established social media companies, Internet Service Providers, and cloud computing companies who routinely deal with discovery requests." Appl. 12.

## II. PROTECTIVE ORDER

"[U]nder Rule 26(c), the Court may sua sponte grant a protective order for good cause shown." *McCoy v. Southwest Airlines Co. Inc.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002). Courts in this district have granted protective orders where the plaintiff sought early discovery to identify an IP address subscriber. *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 18-cv-06938-WHO, 2019 WL 402358, at *3 (N.D. Cal. Jan. 31, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-cv-04999-YGR,

---

[1] The draft language reads "state."

[2] If the amended subpoenas prove insufficient to procure the Doe defendants' identities, Twitch may renew its request as to this information.

2018 WL 4635650, at *4 (N.D. Cal. Sept. 27, 2018); *Quad Int'l, Inc. v. Doe*, No. C 12-05433 CRB LB, 2012 WL 5868966, at *3 (N.D. Cal. Nov. 19, 2012). This case does not involve pornographic content, but it does involve allegations of inflammatory conduct. In addition, the mere fact that an individual is the ISP subscriber does not necessarily mean he or she is the infringing party. *See Strike 3*, 2018 WL 4635650, at *4.

Given the nature of the alleged conduct, I will grant a protective order to the limited extent that any information regarding the defendants by Twitch from the ISPs and social media companies will be treated as confidential for a limited duration. *See Quad Int'l*, 2012 WL 5868966, at *3. Specifically, Twitch may not publicly disclose this information until the Doe defendants have the opportunity to file an application in this Court to be allowed to proceed in this litigation anonymously and I have ruled on that application. If the Doe defendants fail to file an application for leave to proceed anonymously within 30 days after their information is disclosed to Twitch's counsel, this limited protective order will expire. If the Doe defendants include identifying information within their requests to proceed anonymously, I find good cause to order the papers filed under seal until I have the opportunity to rule on the request. If the Doe defendants include identifying information with their requests to proceed anonymously and the request is placed under seal, I will direct Doe defendants to submit a copy of the under-seal request to Twitch and ensure that Twitch has time to respond.

## CONCLUSION

For good cause shown, Twitch's ex parte application for leave to file third-party subpoenas is GRANTED. I order that:

1. Plaintiff may serve a Rule 45 subpoena on Verizon, Comcast, Contina, Charter, Optimum, Suddenlink, OVH, Google, Discord, Microsoft, and Twitter to obtain the true names and addresses of the Doe defendants. The subpoena must have a copy of this Order attached.

2. Verizon, Comcast, Contina, Charter, Optimum, Suddenlink, OVH, Google, Discord, Microsoft, and Twitter will have 30 days from the date of service upon them to serve the Doe defendants with a copy of the subpoena and a copy of this Order. Verizon, Comcast, Contina, Charter, Optimum, Suddenlink, OVH, Google, Discord, Microsoft, and Twitter

may serve the Doe defendants using any reasonable means, including written notice to his or her last known address, transmitted either by first-class mail or via overnight service.

3. The Doe defendants will have 30 days from the date of service upon him or her to file any applications contesting the subpoena (including an application to quash or modify the subpoena) with this Court. If the Doe defendants do not contest the subpoena within that 30-day period, Verizon, Comcast, Contina, Charter, Optimum, Suddenlink, OVH, Google, Discord, Microsoft, and Twitter will have 10 days to produce the information responsive to Twitch.

4. Verizon, Comcast, Contina, Charter, Optimum, Suddenlink, OVH, Google, Discord, Microsoft, and Twitter must preserve any subpoenaed information pending the resolution of any timely filed application to quash.

5. Verizon, Comcast, Contina, Charter, Optimum, Suddenlink, OVH, Google, Discord, Microsoft, and Twitter must confer with plaintiff and may not assess any charge in advance of providing the information requested in the subpoena. Should Verizon, Comcast, Contina, Charter, Optimum, Suddenlink, OVH, Google, Discord, Microsoft, or Twitter elect to charge for the costs of production, it must provide Twitch (i) a billing summary and (ii) cost reports that serve as a basis for such billing summary and any costs claimed by Verizon, Comcast, Contina, Charter, Optimum, Suddenlink, OVH, Google, Discord, Microsoft, or Twitter.

6. Twitch must serve a copy of this order along with any subpoenas issued pursuant to this order to the necessary entities.

7. Any information disclosed to Twitch in response to a Rule 45 subpoena may be used by Twitch solely for the purpose of protecting its rights as set forth in its complaint.

**IT IS SO ORDERED.**

Dated: August 7, 2019



William H. Orrick
United States District Judge