Katherine M. Dugdale, Bar No. 168014
KDugdale@perkinscoie.com
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA  90067-1721
Telephone:  310.788.9900
Facsimile:  310.788.3399

Holly M. Simpkins (*pro hac vice*)
HSimpkins@perkinscoie.com
Lauren Watts Staniar (*pro hac vice*)
LStaniar@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000

Attorneys for Plaintiff
Twitch Interactive, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TWITCH INTERACTIVE, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>MASON APODACA AND JOHN AND JANE DOES 1–99, individuals,<br><br>Defendants. | Case No. 3:19-cv-03418-WHO<br><br>AMENDED COMPLAINT FOR:<br><br>(1) FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)<br>(2) BREACH OF CONTRACT<br>(3) TRESPASS TO CHATTELS<br>(4) FRAUD<br><br>DEMAND FOR JURY TRIAL |

### I.   INTRODUCTION

1. Twitch Interactive, Inc. ("Twitch") is one of the world's leading services for content creators to stream content as part of a social, interactive community.  Each month, millions of people come together to create their own entertainment: live, never-to-be repeated experiences created by the magical interactions of the many.  In 2018, users watched over 500

billion minutes of content.  Twitch's success is due in part to the measures it has taken to create a safe and accessible community for its millions of users.

2. The safety of Twitch's community is its top priority.  For this reason, Twitch forbids obscene material as well as material depicting violence and threats.  Its Terms of Service prohibit users from creating, uploading, or streaming any content that is unlawful, defamatory, obscene, pornographic, harassing, threatening, abusive, or otherwise objectionable.  As expressed in its Community Guidelines ("Guidelines"), Twitch does not tolerate harassing or dangerous content, nudity and sexually explicit content or activities, or physical violence (including gore).

3. Beginning on or about May 25, 2019, Defendants flooded the Twitch.tv directory for the game Artifact with dozens of videos that violated Twitch's policies and terms.  This included, for example, a video of the March 2019 Christchurch mosque attack, hard-core pornography, copyrighted movies and television shows, and racist and misogynistic videos.  Defendants' actions threatened and continue to threaten Twitch and the safety of the Twitch community.

4. Twitch took down the posts and banned the offending accounts, but the offensive video streams quickly reappeared using new accounts.  It appears that Defendants use automated methods to create accounts and disseminate offensive material as well as to thwart Twitch's safety mechanisms.  Such methods are often referred to as "bots."

5. Defendants also use bots to artificially increase the popularity of the streams broadcasting the offensive conduct, making those streams more easily discoverable by users browsing Twitch.

6. Twitch users who inadvertently encountered Defendants' streams were understandably upset and on information and belief some users stopped or reduced their use of the Twitch Services.  Twitch expended significant resources investigating and banning Defendants. To protect the Twitch community, Twitch took the extremely disruptive step of disabling streaming for all newly created accounts for almost two days before imposing two-factor authentication for certain accounts.  In response, Defendants sought to evade these steps using old accounts as well as accounts purchased from other users.

7. Twitch brings this action to enforce the Terms (as defined in paragraph 24) and to hold Defendants accountable for their unlawful and highly offensive activities.

## II. JURISDICTION

8. This Court has federal question jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338, because this action alleges violations of the Lanham Act (15 U.S.C. § 1114).

9. This Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367.

10. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district. Defendants repeatedly, knowingly, and intentionally accessed Twitch servers located in this district to undertake their unlawful activities. While accessing Twitch servers, Defendants engaged in systematic and continuous contacts with this district and targeted their wrongful acts at Twitch, which is headquartered in this district.

## III. INTRADISTRICT ASSIGNMENT

11. This is an intellectual property action to be assigned on a districtwide basis under Civil Local Rule 3-2.

## IV. THE PARTIES

12. Twitch is a Delaware corporation with its principal place of business in San Francisco. Twitch operates the "Twitch Services," which are the website available at http://www.twitch.tv, and its network of websites, software applications, and any other products or services offered by Twitch.

13. Defendant Mason Apodaca, who uses the name "Ganggangchef" online, is a person responsible in whole or in part for the wrongful conduct alleged herein who has operated an account on the Twitch Services under a pseudonym. Mr. Apodaca resides in Las Cruces, New Mexico and owns the Gmail address gangganchef@gmail.com. He is associated with a website and several Discord servers Defendants used to coordinate the attack. Mr. Apodaca's acts described in this Amended Complaint were intentionally directed toward Twitch within this judicial district, subjecting him to personal jurisdiction. Mr. Apodaca also consented to

jurisdiction in this district by entering into a contract with Twitch—the Twitch Terms of Service—that has a California forum selection clause.

14. On information and belief, Doe 1 is a person or entity responsible in whole or in part for the wrongful conduct alleged herein who has operated an account on the Twitch Services under a pseudonym. His acts described in this Amended Complaint were intentionally directed toward Twitch within this judicial district, subjecting him to personal jurisdiction. Twitch will amend this Amended Complaint if and when the legal name of Doe 1 becomes known.

15. Does 2–99 are persons or entities responsible in whole or in part for the wrongdoing alleged herein ("Doe Defendants") (together with Mr. Apodaca and Doe 1, the "Defendants"). Twitch is informed and believes that each of the Defendants participated in, ratified, endorsed, or was otherwise involved in the acts complained of, and have liability for such acts. The acts described in this Amended Complaint were intentionally directed toward Twitch within this judicial district, subjecting the Doe Defendants to personal jurisdiction. Twitch will amend this Amended Complaint if and when the legal names of such persons or entities become known.

## V.   FACTS

**A.   Twitch**

16. Twitch is a real-time streaming video service where community members gather to watch, play, and chat about shared interests—predominantly video games, sports, and creative arts. Twitch was founded in 2011 and has been an Amazon subsidiary since 2014.

17. On Twitch, streamers (those Twitch users who share live content on the service) pursue their interests to engage and entertain their viewers. More than 3,000,000 unique streamers per month stream via Twitch's service. Streamers work extensively to create and foster authentic, passionate, and loyal communities on Twitch. The Twitch Services enable streamers to earn a livelihood by offering them ways to monetize their streaming.

18. Viewers from around the world who are fans of a particular video game, subject area, or streamer use Twitch to find the content that interests them. Viewers use Twitch to find and view interesting content and to interact with their favorite streamers.

19. "Popular" streamers—those with many people watching and following their stream—are easier for viewers to find on Twitch. Viewers can also find streamers by searching for "live" streams under a specific game directory.

20. Users who only watch streams may, but are not required to, create an account. Streamers, however, must create an account.

**B.     Twitch's Trademarks**

21. Twitch owns rights in the "GLITCH" trademark (U.S. Registration No. 5,769,921), pictured below, and the TWITCH mark (U.S. Registration Nos. 4,275,948, 5,769,920, and 5,503,626).



22. Twitch has used these marks in commerce in connection with its goods and services, including the Twitch Services, since at least as early as June 2012.

23. Since their first use, Twitch has invested substantial resources in marketing, advertising, and distributing its goods and services, including the Twitch Services, under the GLITCH and TWITCH marks.

24. Twitch has attained substantial goodwill and strong recognition in the GLITCH and TWITCH marks and the marks have come to be exclusively associated with Twitch.

**C.     Twitch's Terms and Guidelines**

25. In order to create an account or otherwise use or access the Twitch Services or utilize the Twitch developer platform, a prospective user must agree to be bound by, among other things, Twitch's Terms of Service, Community Guidelines, Twitch Developer Services Agreement, and Trademark Guidelines (collectively, the "Terms"). Specifically, the Terms state:

"The Terms of Service apply whether you are a user that registers an account with the Twitch Services or an unregistered user. You agree that by clicking 'Sign Up' or otherwise registering, downloading, accessing or using the Twitch Services, you are entering into a legally binding agreement between you and Twitch regarding your use of the Twitch Services. You acknowledge that you have read, understood, and agree to be bound by these Terms of Service."

26. Twitch issues its users a limited, non-sublicensable license to access or use the Twitch Services for personal or internal business use only, provided that the user agrees to the Terms. "Any use of the Twitch Services or the Materials except as specifically authorized in these Terms of Service, without the prior written permission of Twitch, is strictly prohibited and may violate intellectual property rights or other laws."

27. The Terms expressly prohibit anyone who accesses or uses the Twitch Services from posting obscene, pornographic, violent, or otherwise harmful content. Specifically, the Terms prohibit users from:

   a. creating, uploading, transmitting, or distributing "any content that is inaccurate, unlawful, infringing, defamatory, obscene, pornographic, invasive of privacy or publicity rights, harassing, threatening, abusive, inflammatory, or otherwise objectionable";

   b. interfering with or damaging "operation of the Twitch Services or any user's enjoyment of them, by any means, including uploading or otherwise disseminating viruses, adware, spyware, worms, or other malicious code";

   c. manipulating "identifiers in order to disguise the origin of any User Content transmitted through the Twitch Services"; or

   d. using "the Twitch Services for any illegal purpose, or in violation of any local, state, national, or international law or regulation, including, without limitation, laws governing intellectual property and other proprietary rights, data protection and privacy."

28. The Guidelines, as part of the Terms, govern activity on Twitch with the goal of "provid[ing] the best shared social video experience created by our growing community where creators and communities can interact safely."

29. The Guidelines state that Twitch does not tolerate obscene or violent content of the kind at issue here. Under the Guidelines,

   a. "[n]udity and sexually explicit content or activities, such as pornography, sexual acts or intercourse, and sexual services, are prohibited";

   b. "[c]ontent that exclusively focuses on extreme or gratuitous gore and violence is prohibited"; and

   c. "any content or activity that attempts to intimidate, degrade, abuse, or bully others, or creates a hostile environment for others . . . is prohibited."

30. The Guidelines make clear that Twitch will punish offensive conduct: "To protect the integrity of our community, as the provider of the service, we at Twitch reserve the right to suspend any account at any time for any conduct that we determine to be inappropriate or harmful. Such actions may include: removal of content, a strike on the account, and/or suspension of account(s)."

31. The Terms also prohibit the use of automated programs such as bots to create accounts or artificially inflate a channel's viewer or follower statistics. They state that users shall not: "access any website, server, software application, or other computer resource owned, used and/or licensed by Twitch, including but not limited to the Twitch Services, by means of any robot, spider, scraper, crawler or other automated means for any purpose, or bypass any measures Twitch may use to prevent or restrict access to any website, server, software application, or other computer resource owned, used and/or licensed [to] Twitch, including but not limited to the Twitch Services."

32. Twitch's efforts do not end with the posting of its Terms. Twitch employs a Trust and Safety team that operates around the clock and around the globe to investigate and take action in connection with violations of the Terms.

33. Twitch also invests in technologies and processes that address potential risks to user safety, with the aim to create the best possible experience for streamers and their audiences. For example, AutoMod, a Twitch proprietary tool, allows a streamer to automatically filter out messages in chat that the streamer deems inappropriate or unwelcome. Twitch also offers tools that streamers can deploy to block or ban users from their audience and report them to Twitch's safety operations team.

34. Twitch continuously works to improve its ability to detect and act upon violations of the Terms and is continuing to invest in technologies to support this effort.

**D.  Defendants' Unlawful Activity**

35. Beginning on or about May 25, 2019, Defendants co-opted the game directory for Artifact to broadcast prohibited content, including hard-core pornography, racist and misogynistic videos, copyrighted movies and television shows, and videos depicting violence, including videos of the March 2019 Christchurch mosque attack.

36. Twitch took swift action against the accounts and users that posted these videos, immediately and permanently suspending them consistent with the Terms.

37. However, despite Twitch's best efforts, new streamers quickly appeared in the Artifact game directory to re-post the same or similar offending videos. On information and belief, Defendants used bots and other automated programs to quickly open new Twitch accounts and continue streaming the offending videos as soon as Twitch shut down accounts.

38. On information and belief, Defendants formed a group to spread pornography and other obscene, offensive and terrorist videos, or infringing content on Twitch. Defendants shared methods to evade Twitch's takedown measures, including code for bot programs.

39. Defendants used bots, software programs that send fake viewers to a streamer's channel, to artificially inflate the viewer statistics associated with the offending videos. As the streamer's viewer count increases, his or her stream becomes easier to find for Twitch viewers seeking content. Defendants manipulated the viewer counts of their streams to promote their prohibited channels.

40. Defendants coordinated with one another to quickly re-post the videos once Twitch acted against them. Calling themselves "Artifact Streams," Defendants used third-party websites including, but not limited to, Google, Discord, and Weebly to communicate about the attack on Twitch. When Google and Discord shut Defendants down, Defendants set up additional Discord groups. Defendants finally moved to Weebly where they opened a chat room and displayed pornographic videos. Weebly ultimately took down the page.



41. Defendants also coordinated their attacks and activities via a website, www.artifactstreams.com. The Artifact Streams website prominently displayed the GLITCH mark, as shown below.



42. Twitch did not give Defendants permission to use the GLITCH mark in this way. This use was likely to cause confusion as to Twitch's association or affiliation with Defendants.

43. Linked to the Artifact Streams website was a Twitter page, https://twitter.com/TwitchToS, that Defendants used to disseminate their prohibited content and direct viewers to that content. The @TwitchToS Twitter account prominently displayed the TWITCH mark in its URL, Twitter name, and Twitter page, as shown below.



44. Twitch did not give Defendants permission to use the TWITCH mark in this way. This use was likely to cause confusion as to Twitch's association or affiliation with Defendants.

45. Defendants' actions harmed Twitch and its community.

46. Viewers seeking legitimate content on Twitch encountered Defendants' streams and were understandably upset. Many viewers Tweeted their reactions to Defendants' streams. The following are a few examples.





-11-

47. Twitch ultimately suspended streaming for all new Twitch accounts. This was a bold but disruptive step that rippled across the Twitch community as legitimate streamers who joined Twitch to share their original content were unable to stream.

48. Defendants then used old Twitch accounts to continue broadcasting the offending videos. On information and belief, Defendants took even took extreme measures of purchasing accounts from third-parties (in violation of the Terms).

49. To further curb Defendants' attack, Twitch updated its software to require two-factor authentication for any account that will be used to stream. Twitch lifted its temporary ban on streaming from new accounts once it implemented two-factor authentication.

50. Twitch expended significant resources combatting Defendants' attack. It shut down a key part of its services (streaming for new accounts), responded to user comments and concerns, changed its account process to include two-factor authentication, spent time and money researching and taking technological action against Defendants, responded to press inquiries, and hired legal counsel.

## FIRST CLAIM FOR RELIEF
### Federal Trademark Infringement
### (15 U.S.C. § 1114)

51. Twitch realleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

52. Twitch owns the GLITCH mark (U.S. Registration No. 5,769,921) and the TWITCH mark (U.S. Registration Nos. 4,275,948, 5,769,920 and 5,503,626). Twitch uses these marks in commerce in connection with, among other things, the provision of the Twitch Services. Attached hereto as Exhibit A are true and correct copies of the U.S. Patent and Trademark Office registrations for the GLITCH mark and the TWITCH mark.

53. As described above, Defendants used the GLITCH and TWITCH marks to advertise and draw viewership to their Twitch.tv streams on which they featured prohibited content.

54. Defendants prominently featured the GLITCH mark on www.artifactstreams.com, which Defendants used to promote their unlawful Twitch.tv. streams. Defendants prominently featured the TWITCH mark on a Twitter account, @TwitchToS, which they used to link to and promote the prohibited content on Twitch.

55. Defendants' use of the GLITCH and TWITCH marks constituted a reproduction, counterfeit, copy, or colorable imitation of registered marks for which the use, sale offering for sale, and advertising of their Twitch.tv streams was likely to cause confusion or mistake or lead to deception.

56. Defendants used the GLITCH and TWITCH marks without Twitch's authorization.

57. Defendants' infringement of the GLITCH and TWITCH marks was willful.

58. Twitch is entitled to compensatory damages, lost profits, statutory damages, enhanced damages, and/or costs incurred in pursuing this action.

59. This is an exceptional case under 15 U.S.C. § 1117(a), entitling Twitch to recover its attorneys' fees incurred in connection with this action.

## SECOND CLAIM FOR RELIEF
### Breach of Contract
### (California Common Law)

60. Twitch realleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

61. Access to and use of the Twitch Services is governed by and subject to the Terms.

62. At all relevant times, Twitch prominently displayed and/or provided links to the Terms. Twitch users are presented with and must affirmatively accept the Terms to register for a Twitch account.

63. The Guidelines are incorporated into the Terms by reference. A violation of the Guidelines is a violation of the Terms.

64. The Terms are binding on Defendants. Each of the Defendants agreed to abide by the Terms by creating a Twitch account, by using the Twitch Services, and/or by accessing the Twitch Services to disseminate the offending videos.

65. On information and belief, Defendants regularly accessed the Twitch Services with knowledge of the Terms and the prohibitions contained therein.

66. The Terms are valid, enforceable contracts between Twitch and each of the Defendants.

67. Defendants willfully, continuously, and materially breached the Terms by engaging in the conduct described above by, for example, streaming prohibited content on Twitch.tv, evading Twitch's efforts to ban Defendants' streams, and accessing the Twitch Services with bots.

68. Defendants breached the Terms by, among other things,
   a. streaming content on Twitch.tv that is prohibited by the Terms, including videos depicting violence and gore (most notably, the Christchurch mosque attack), hard core pornography, copyrighted movies and television shows, and videos depicting racist and misogynistic imagery and messages;
   b. manipulating their identifying information (including names and IP addresses) to "disguise the origin of any User Content transmitted through the Twitch Services";
   c. impairing, interfering with, disrupting, negatively affecting, and/or inhibiting other users' enjoyment of the Twitch Services by posting obscene, violent, and harassing content in violation of the Terms; and/or
   d. using bots to access the Twitch Services, tamper with (i.e., artificially inflate) their live view statistics, and/or promote their nefarious content to unsuspecting Twitch viewers.

69. Twitch has dutifully performed its obligations pursuant to the Terms.

70. As a direct and proximate result of Defendants' material breaches of the Terms, Twitch has been harmed, thereby entitling it to compensatory damages, attorneys' fees, costs, and/or other equitable relief against Defendants. Twitch is entitled to special damages in the amount of lost profits and other reasonably foreseeable harms proximately caused by Defendants' breach.

### THIRD CLAIM FOR RELIEF
**Trespass to Chattels**
**(California Common Law)**

71. Twitch realleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

72. The Terms authorize Defendants to access the Twitch Services for a limited purpose—to stream and watch legitimate content on Twitch.tv. The Terms do not permit Defendants to access the Twitch Services to stream obscene, excessively violent, or pornographic content.

73. Defendants intentionally and without authorization exceeded permissible access to the Twitch Services by streaming unauthorized content on Twitch.tv.

74. Defendants intentionally and without authorization accessed the Twitch Services with bots designed to artificially inflate the live view statistics associated with their accounts, making it easier for Twitch viewers to find the offending streams.

75. Defendants' intentional interference with Twitch's possession of the Twitch Services proximately caused Twitch injury.

76. Defendants' unauthorized access to the Twitch Services impaired the condition, quality, or value of the Twitch Services by degrading the quality of the content on Twitch, forcing Twitch to suspend streaming for all new accounts, and exposing Twitch users to offensive and unwanted content.

77. Twitch is entitled to all remedies available at law or equity, including injunctive relief, compensatory damages, attorneys' fees, and/or other equitable or monetary remedies.

### FOURTH CLAIM FOR RELIEF
**Fraud**
**(California Common Law)**

78. Twitch realleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

79. Beginning on or about May 25, 2019, Defendants registered Twitch accounts to post obscene, violent, terrorist and pornographic content on Twitch in violation of the Terms.

80. Defendants had no intention of abiding by the Terms and made fraudulent representations to the contrary to Twitch, knowing them to be false and with the intent of defrauding Twitch. For instance, Defendants represented and agreed not to upload to the Twitch Services "any content that is inaccurate, unlawful, infringing, defamatory, obscene, pornographic, invasive of privacy or publicity rights, harassing, threatening, abusive, inflammatory, or otherwise objectionable."

81. Twitch immediately shut down the accounts Defendants used to stream the obscene, violent, terrorist and pornographic content.

82. Knowing that Twitch had barred them from further accessing the Twitch Services, Defendants created additional Twitch accounts; agreed to the Terms, thereby falsely representing to Twitch that they would not post content that violated the Terms; and then violated their promise by immediately posting obscene, violent, terrorist and pornographic videos.

83. On information and belief, Defendants misrepresented and concealed their identities and other personally identifying information (such as IP addresses) to create accounts on Twitch from which to disseminate the objectionable videos. Defendants likewise used Twitch accounts belonging to third-parties to stream the prohibited content on Twitch.tv, further misrepresenting to Twitch their identities and intent to use the Twitch Services.

84. Twitch justifiably relied on Defendants' representations and granted Defendants access to the Twitch Services.

85. As a direct and proximate result of Defendants' conduct, Twitch suffered damage to its goodwill and lost resources, such as money, technical capacity, and personnel, which Twitch would not have been forced to expend but for Defendants' fraud.

86. Twitch is entitled to all remedies available at law or equity, including injunctive relief, compensatory damages, punitive damages, and/or other equitable or monetary remedies.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Twitch prays for the following relief:

1.     That Defendants and their officers, agents, representatives, servants, employees, successors and assigns, and all others in active concert or participation with Defendants be preliminarily and permanently enjoined from:

    a. Using or accessing the Twitch Services;

    b. Posting content on the Twitch Services that is prohibited by the Terms, including violent, pornographic, or offensive content.

    c. Creating, writing, developing (either directly or indirectly) any robot, crawler, spider, or other software that interacts, either directly or indirectly, with the Twitch Services;

    d. Using the GLITCH or TWITCH marks in any way; or

    e. Assisting any individual or company in engaging in the conduct described in 1(a)-(d) above.

2.     An award to Twitch of restitution and damages, including, but not limited to, enhanced, liquidated, compensatory, special, statutory and punitive damages, and all other damages permitted by law.

3.     An award to Twitch of its costs incurred in this suit, including, but not limited to, reasonable attorneys' fees.

4.     Such other relief as this Court deems just and proper.

**DEMAND FOR A JURY TRIAL**

Plaintiff hereby demands a trial by jury of all issues so triable.

DATED:  May 13, 2020				**PERKINS COIE LLP**

By: */s/Holly M. Simpkins*
    Katherine M. Dugdale, Bar No. 168014
    KDugdale@perkinscoie.com
    Holly M. Simpkins (*pro hac vice*)
    HSimpkins@perkinscoie.com
    Lauren E. Staniar (*pro hac vice*)
    LStaniar@perkinscoie.com

Attorneys for Plaintiff
Twitch Interactive, Inc.